## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREDRIK ODSVALL, Derivatively on Behalf of Nominal Defendant TALKSPACE, INC. f/k/a HUDSON EXECUTIVE INVESTMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>OREN FRANK, MARK HIRSCHHORN, RONI FRANK, JEFFREY CROWE, EREZ SHACHAR, CURTIS WARFIELD, JACQUELINE YEANEY, CHARLES BERG, MADHU PAWAR, DOUGLAS L. BRAUNSTEIN, DOUGLAS G. BERGERON, JONATHAN DOBRES, ROBERT GREIFELD, AMY SCHULMAN, and THELMA DUGGIN,<br><br>Defendants,<br><br>and<br><br>TALKSPACE, INC. f/k/a HUDSON EXECUTIVE INVESTMENT CORPORATION,<br><br>Nominal Defendant. | Case No. 1:22-cv-5016<br><br>**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |

Plaintiff Fredrik Odsvall ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Talkspace, Inc. ("Talkspace" or the "Company") f/k/a Hudson Executive Investment Corporation ("HEIC"), against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, contribution for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and violations of Section 14(a) of the Exchange Act. Plaintiff's allegations are based upon his personal knowledge as to himself and his

1

own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Talkspace with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.   NATURE AND SUMMARY OF THE ACTION

1.   HEIC was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.

2.   Talkspace is a behavioral healthcare company that is purportedly enabled by a "purpose-built technology platform." It provides individuals and licensed therapists, psychologists, and psychiatrists with an online platform for one-on-one therapy delivered via messaging, audio, and video.

3.   On June 22, 2021, Talkspace became public through a series of transactions with HEIC (the "Business Combination"). The proxy statement filed in connection with the Business Combination, as well as statements thereafter, claimed that Talkspace expected significant growth despite increased customer acquisition costs in the first half of 2021.

4.   The truth began to emerge on August 9, 2021 when Talkspace announced that it had experienced increased customer acquisition costs during second quarter 2021 due to increases in the cost of digital advertising. However, management reaffirmed prior fiscal 2021 guidance. On this news, the Company's share price fell $1.11, or 18.72%, to close at $4.82 per share on August 10, 2021, on unusually heavy trading volume.

5.   Then, on November 15, 2021, Talkspace announced a $3.4 million increase in its allowance for credit losses on accounts receivables, in connection with its third quarter 2021

results. It also reported a "slowdown" in business due to "a decline in conversion rates," among other things. The Company also announced that its co-founders would be stepping down immediately from their management roles. On this news, the Company's stock price fell $1.23, or 36.38%, to close at $2.16 per share on November 16, 2021.

6.     These revelations precipitated the filing of a consolidated securities class action in this District against Talkspace and certain of defendants, captioned *In re Talkspace, Inc. Securiites Litigation*, 22-civ-163 (the "Securities Class Action").

7.     Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board.  The Board is currently composed of seven members, all of whom are named in this action.  As alleged herein, Braunstein participated in the negotiation and finalization of the Business Combination, and the four members of the Audit Committee failed to exercise oversee risk management of the Company, allowing misleading statements to be disseminated.  Thus, more than half the members would be interested in a demand to investigate their own wrongdoing.

## II.     JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 14(a) of the Securities Exchange Act of 1934.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

### III.   PARTIES

**Plaintiff**

10.     Plaintiff Fredrik Odsvall purchased 202 shares of Talkspace on February 16, 2021 and has continuously owned his stock since that date.

**Nominal Defendant**

11.     Nominal Defendant Talkspace is a Delaware corporation with its principal executive offices located at New York, New York.  The Company's common stock trades on the NASDAQ exchange under the symbol "TALK," and its redeemable warrants trade on the NASDAQ under the symbol "TALKW." Each whole redeemable warrant is exercisable for one share of common stock at an exercise price of $11.50 per share.

**Defendants**

12.     Defendant Oren Frank ("Frank") served as Chief Executive Officer ("CEO") and a director of Talkspace from 2012 to November 15, 2021. He co-founded Talkspace with his wife, Roni Frank. He is named as a defendant in the Securities Class Action.

13.     Defendant Mark Hirschhorn ("Hirschhorn") has served as Chief Operating Officer ("COO") of Talkspace from February 2020 to November 22, 2021. He also served as Talkspace's Chief Financial Officer ("CFO") from February 2020 to July 25, 2021. He is named as a defendant in the Securities Class Action.

14.     Defendant Roni Frank ("R. Frank") served as a director of Talkspace and Head of Clinical Services from 2012 to November 15, 2021. She co-founded Talkspace with her husband, Oren Frank.

15.     Defendant Jeffrey Crowe ("Crowe") has served as a director of Talkspace since May 2016.

16.     Defendant Erez Shachar ("Shachar") has served as a director of Talkspace since August 2017.

17.     Defendant Curtis Warfield ("Warfield") has served as a director of Talkspace since the close of the Business Combination.

18.     Defendant Jacqueline Yeaney ("Yeaney") has served as a director of Talkspace since the close of the Business Combination.

19.     Defendant Charles Berg ("Berg") has served as a director of Talkspace since the close of the Business Combination.

20.     Defendant Madhu Pawar ("Pawar") has served as a director of Talkspace since the close of the Business Combination.

21.     Defendant Douglas L. Braunstein ("Braunstein") served as co-founder, President, and Chairman of HEIC until the Business Combination. He has served as a director of Talkspace since the Business Combination and as interim CEO of Talkspace since Frank's resignation. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the definitive proxy statement dated May 28, 2021 (the "Proxy Statement"). He is named as a defendant in the Securities Class Action.

22.     Defendant Douglas G. Bergeron ("Bergeron") served as CEO and a director of HEIC until the Business Combination. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. He is named as a defendant in the Securities Class Action.

23.     Defendant Jonathan Dobres ("Dobres") served as CFO of HEIC until the Business Combination. He solicited and/or permitted the use of his name to solicit consent or authorization

for the Business Combination by issuing the Proxy Statement. He is named as a defendant in the Securities Class Action.

24.     Defendant Robert Greifeld ("Greifeld") served as a director of HEIC until the Business Combination. He solicited and/or permitted the use of his name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. He is named as a defendant in the Securities Class Action.

25.     Defendant Amy Schulman ("Schulman") served as a director of HEIC until the Business Combination. She solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. She is named as a defendant in the Securities Class Action.

26.     Defendant Thelma Duggin ("Duggin") served as a director of HEIC until the Business Combination. She solicited and/or permitted the use of her name to solicit consent or authorization for the Business Combination by issuing the Proxy Statement. She is named as a defendant in the Securities Class Action.

27.     Defendants Frank, Hirschhorn, R. Frank, Crowe, Shachar, Warfield, Yeaney, Berg, Pawar, and Braunstein are sometimes referred to hereinafter as the "Talkspace Defendants." Defendants Braunstein, Bergeron, Dobres, Greifeld, Schulman, and Duggin are sometimes referred to hereinafter as the "HEIC Defendants." Defendants Frank, Hirschhorn, R. Frank, Crowe, Shachar, Warfield, Yeaney, Berg, Pawar, Braunstein, Bergeron, Dobres, Greifeld, Schulman, and Duggin are sometimes referred to hereinafter as the "Individual Defendants."

## IV.   DUTIES OF THE INDIVIDUAL DEFENDANTS

28.     By reason of their positions as officers, directors, and/or fiduciaries of Talkspace and because of their ability to control the business and corporate affairs of Talkspace, at all relevant times, the Individual Defendants owed Talkspace and its shareholders fiduciary obligations of

good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Talkspace in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Talkspace and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Talkspace and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

29.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Talkspace, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Talkspace, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

30.     To discharge their duties, the officers and directors of Talkspace were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Talkspace were required to, among other things:

    (a)    Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    (b)    Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

    (c)    Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Background

31.     HEIC was a special purpose acquisition company formed for the purpose of effect purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses. It completed its initial public offering ("IPO") on June 11, 2020, selling 41.4 million units at $10.00 per unit. Each unit consists of one share of HEIC Class A common stock and one-half of one redeemable public warrant of HEIC, whereby each public warrant entitles the holder to purchase one share of Class A common stock at an exercise price of $11.50 per share.

32.     HEIC had considerable discretion in identifying and consummating a business combination. The IPO documents stated that HEIC intended to focus on a target company in two industry sectors: (1) financial services with a focus on financial technology; and (2) healthcare, including healthcare information technology, services, and products. HEIC was also subject to certain general limitations imposed by its Certificate of Incorporation:

- *First*, HEIC must acquire a target business with a fair market value equal to at least 80% of the net assets held in the Trust Account following the IPO (net of amounts disbursed for working capital and excluding the amount of any deferred underwriting discount);

- *Second*, HEIC only had 24 months from the closing date of the IPO to complete a business combination, or else its corporate existence would cease, except for purposes of winding up its affairs and liquidating. As such, HEIC was required to hold the approximately $414 million of proceeds from its IPO in a trust account,

8

which were to be released only upon the consummation of a business combination or liquidation.

- *Third*, if HEIC's stockholders approved an amendment to the Certificate of Incorporation that would affect the substance or timing of HEIC's obligation to redeem 100% of the public shares if HEIC did not complete a business combination on time, HEIC was required to provide the holders of its public shares with the opportunity to redeem all or a portion of their public shares upon approval of any such amendment.

33.     Talkspace is a behavioral healthcare company that is purportedly enabled by a "purpose-built technology platform." It provides individuals and licensed therapists, psychologists, and psychiatrists with an online platform for one-on-one therapy delivered via messaging, audio, and video.

34.     On January 13, 2021, HEIC announced its agreement to take Talkspace public.

35.     On June 22, 2021, Talkspace became public via the Business Combination.

**B.     The Individual Defendants Caused the Company to Issue Materially Misleading Statements**

36.     On February 2, 2021, the HEIC Defendants filed the registration statement and draft proxy for the Business Combination on Form S-4 with the SEC, which was incorporated into a final prospectus and proxy statement after several amendments and was declared effective on May 28, 2021. It was signed by the HEIC Defendants and incorporated information about Talkspace provided by Defendants Frank and Hirschhorn. In the Proxy Statement, the HEIC Defendants touted the rationale for recommending stockholders to vote to approve the Business Combination, stating:

- ***Attractive Valuation.*** As more fully described under "Comparable Company Analysis," the purchase price values Talkspace at a discount to

9

selected comparable companies with respect to Talkspace's pro forma implied estimated revenue (for 2021E and 2022E), estimated gross profit (for 2021E and 2022E), actual revenue and estimated revenue compound annual growth rate (from 2019A through 2023E).

- ***Reasonableness of Aggregate Consideration.*** Following a review of the financial data provided to [HEIC], including Talkspace's historical financial statements and certain unaudited prospective financial information, as well as [HEIC's] due diligence review of the Talkspace business and the views of [HEIC's] financial and other advisors, the [HEIC] ***Board considered the aggregate consideration to be paid and determined that the aggregate consideration was reasonable in light of such data and financial information***

- ***Business and Financial Condition and Prospects. After conducting extensive due diligence, along with their familiarity with Talkspace's business from prior commercial experiences, the [HEIC] Board and [HEIC] management had knowledge of, and were familiar with, Talkspace's business, financial condition, results of operations and future growth prospects.*** The [HEIC] Board considered the results of the due diligence review of Talkspace's business, including its comprehensive and diverse data, intellectual property and network assets, its payor customers, its ability to enhance, extend and expand its platform, the potential impact of COVID-19 on its business, as well as the legal due diligence performed by Milbank LLP, the quality of earnings prepared by KPMG LLP and the financial due diligence conducted by [HEIC's] management.

*      *      *

- ***Talkspace's Growing Customer Base. [HEIC] and Talkspace forecasted that the number of total business to customer subscribers will increase from 19,851 in 2019, to 31,214 in 2020, 46,259 in 2021, 71,001 in 2022 and 85,829 in 2023.*** [HEIC] and Talkspace additionally forecasted that the number of total business to business eligible lives will increase from 6,725,000 in 2019, to 39,285,000 in 2020, 65,341,000 in 2021, 129,093,000 in 2022 and 174,218,000 in 2023.

*      *      *

- ***Talkspace Being an Attractive Target. The [HEIC] Board considered the fact that Talkspace*** (i) is of a size relevant to the public marketplace, (ii) has a strong existing management team, (iii) ***has a significant total addressable market and growth expansion opportunities,*** (iv) provides an opportunity for operational improvement and (v) would benefit from the consummation of the Transactions as a result of becoming a public company

10

and deleveraging, which the [HEIC] Board believed would improve Talkspace's ability to grow, including through acquisitions.

37.     The Proxy Statement cited the financial information that the HEIC Board considered in recommending the Business Combination, which had been provided by Talkspace:

| (in millions, except active members and percentages) | Calendar Year Ending December 31, 2020E | | Calendar Year Ending December 31, 2021E | | Calendar Year Ending December 31, 2022E | | Calendar Year Ending December 31, 2023E | |
|---|---|---|---|---|---|---|---|---|
| Total business to consumer active members | | 31,214 | | 46,259 | | 71,001 | | 85,829 |
| Total business to business eligible lives (in thousands) | | 39,285 | | 65,341 | | 129,093 | | 174,218 |
| Net revenue | $ | 74 | $ | 125 | $ | 205 | $ | 285 |
| Percentage growth | | 94% | | 69% | | 64% | | 39% |
| Gross profit | $ | 47 | $ | 80 | $ | 129 | $ | 176 |
| Percentage margin | | 63% | | 64% | | 63% | | 62% |
| Operating expenses | $ | (62) | $ | (93) | $ | (114) | $ | (134) |
| EBITDA (1) | $ | (15) | $ | (12) | $ | 14 | $ | 42 |

38.     The Proxy Statement also purported to warn of the risks Talkspace faced when attracting new customers. Specifically, it stated:

> *Our business and the markets we operate in are new and rapidly evolving, which makes it difficult to evaluate our future prospects and the risks and challenges we may encounter.*

These risks and challenges include our ability to:

- attract new clients and members to our platform and position our platform as a convenient and accepted way to access therapy and psychiatry;

*         *         *

- attract new and existing clients and members to rapidly adopt new offerings on our platform; [and]

*         *         *

- effectively manage our growth and business operations.

39.     The Proxy Statement purported to warn that Talkspace's future "significantly depends on [its] marketing practices." In relevant part, it stated:

> *Our future growth and profitability of our business will depend in large part upon the effectiveness and efficiency of our marketing efforts, and our ability to develop brand awareness cost-effectively.*

11

Our business success depends on our ability to attract and retain clients and members, which significantly depends on our marketing practices. Our future growth and profitability will depend in large part upon the effectiveness and efficiency of our marketing efforts, including our ability to:

- ***create greater awareness of our brand;***

- identify the most effective and efficient levels of ***spending in each market, media and specific media vehicle;***

- determine the appropriate creative messages and media mix for advertising, marketing and promotional expenditures;

- ***effectively manage marketing costs (including creative and media) to maintain acceptable consumer acquisition costs***;

- select the most effective markets, media and specific vehicles in which to advertise; and

- ***convert consumer inquiries into clients and members.***

We believe that developing and maintaining widespread awareness of our brand in a cost-effective manner is critical to achieving widespread adoption of our solution and attracting new clients and members. Our brand promotion activities may not generate consumer awareness or increase revenue, and even if they do, any increase in revenue may not offset the expenses we incur in building our brand. If we fail to successfully promote and maintain our brand, or incur substantial expenses in doing so, we may fail to attract or retain clients and members necessary to realize a sufficient return on our brand-building efforts or to achieve the widespread brand awareness that is critical for broad adoption of our brands.

40.     The above statements in ¶¶ 36-39 were materially misleading because they failed to disclose: (1) that Talkspace was experiencing significantly increased online advertising costs in its business-to-consumer ("B2C") business since the beginning of 2021; (2) that Talkspace was experiencing lower conversion rates in its online advertising in its B2C business; (3) that, as a result of the foregoing, Talkspace faced ballooning customer acquisition costs; (4) that Talkspace had overstated the expected amounts recoverable from its accounts receivable; (5) that, as a result of the foregoing, Talkspace's fiscal 2021 guidance lacked a reasonable basis.

**C.    The Business Combination is Approved Pursuant to the Misleading Proxy Statement**

41.    On June 17, 2021, Talkspace announced that shareholders had voted to approve the transaction on the basis of the representations in the proxy statement and it had completed the Business Combination.

**D.    The Truth Begins to Emerge as the Talkspace Defendants Continue to Issue Materially Misleading Statements**

42.    On August 9, 2021, after the market closed, Talkspace announced its second quarter 2021 financial results in a press release. During a related conference call held the same day, defendant Frank revealed some of the issues relating to increased customer acquisition costs ("CAC"), but downplayed their impact. He stated, in relevant part:

> While our B2C revenue grew substantially, we and many of our peers are experiencing elevated customer acquisition cost, due mainly to a material increase in the cost of digital advertising.

> As a result of this environment, we're taking a number of steps which we believe further strengthens our business: First, we increased our advertising budget, which . . . we believe will ultimately increase members retention, engagement and satisfaction.

43.    During the same call, defendant Hirschhorn explained that CAC had increased since the beginning of the year:

> Adjusted EBITDA loss was $12 million in the second quarter 2021 compared to the loss of $300,000 in the second quarter 2020. As Oren mentioned, ***CAC has been meaningfully elevated since the beginning of the year relative to prior periods. The majority of the excess losses in the quarter relative to initial expectations can be attributed to this increase in customer acquisition cost. While advertising costs have dramatically increased during the first-half of this year***, the current environment makes it more difficult to predict when customer acquisition costs will ultimately normalize. As such we will not be providing any update to guidance on EBITDA for the remainder of the year.

44.    On this news, the Company's share price fell $1.11, or 18.72%, to close at $4.82 per share on August 10, 2021, on unusually heavy trading volume.

13

45.     However, these statements failed to disclose the true state of affairs. Among other things, the Talkspace Defendants reaffirmed the Company's prior fiscal 2021 net revenue guidance of $125 million. They claimed that Talkspace's outlook for net revenue for third quarter 2021 was $32 million. In the same August 9, 2021 press release, defendant Frank was quoted as saying:

> "We continued to experience broad-based momentum throughout our business in the second quarter, driven by significant demand tailwinds and a generational shift to virtual care. Our differentiated and comprehensive product portfolio continues to resonate in the marketplace, and *we are seeing traction in both expanding our offering within existing clients as well as adding new clients*. We are ideally positioned to address the vast, unmet and growing demand for mental health services in innovative ways, and we are excited to keep executing on our strategy."

46.     The above statements in ¶¶ 42-43, 45 were materially misleading because they failed to disclose: (1) that Talkspace was experiencing significantly increased online advertising costs in its B2C business since the beginning of 2021; (2) that Talkspace was experiencing lower conversion rates in its online advertising in its B2C business; (3) that, as a result of the foregoing, Talkspace faced ballooning customer acquisition costs; (4) that Talkspace had overstated the expected amounts recoverable from its accounts receivable; (5) that, as a result of the foregoing, Talkspace's fiscal 2021 guidance lacked a reasonable basis.

### E.     The Truth Fully Emerges

47.     On November 15, 2021, after the market closed, Talkspace announced its third quarter 2021 financial results in a press release that revealed an increase in the allowance for credit losses, as well as a slowdown in business. Specifically, the Company stated:

- Net Revenue . . . came in below expectations due to a lower number of acquired customers in the direct-to-consumer business and an adjustment to reserves, which was only partially offset by growth in the B2B Gross Revenue.

- In the third quarter *we increased the allowance for credit losses on receivables by $3.4 million*, of which $2.8 million related to prior quarters. Excluding the impact of this one-time non-cash adjustment, consolidated Revenue would have been $29.2 million, up 37% year-over-year.

- Direct-to-consumer Revenue was $18.6 million, a 10% year-over-year increase in the third quarter. ***The slowdown in the B2C business resulted in part from delays in launching new products and features, as well as a decline in conversion rates.***

\*        \*        \*

- Gross profit was $14.2 million in the third quarter, compared to $15.1 million in the prior-year quarter. Gross margin was 54% compared to 70% a year ago. This decline was due to the increase in the reserve for credit losses on receivables, revenue mix shift towards B2B, and continued investment in W2 therapist network.

48.     The same day, Talkspace also announced that Defendants Oren and Roni Frank were stepping down from their respective positions, effective immediately.

49.     During a related conference call held the same day, defendant Braunstein acknowledged that "the overall financial results for the third quarter came in below expectations management shared with investors on our last earnings call."

50.     On this news, the Company's stock price fell $1.23, or 36.38%, to close at $2.16 per share on November 16, 2021.

## VI.     DAMAGES TO THE COMPANY

51.     As a direct and proximate result of the Individual Defendants' conduct, Talkspace has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

    a.  Legal fees incurred in connection with the Securities Class Action;

    b.  Any funds paid to settle the Securities Class Action; and

    c.  Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Talkspace.

52.     In addition, Talkspace's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully

admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

53.     The actions complained of herein have irreparably damaged Talkspace's corporate image and goodwill.  For at least the foreseeable future, Talkspace will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Talkspace's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.     DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

54.     Plaintiff brings this action derivatively in the right and for the benefit of Talkspace to redress injuries suffered, and to be suffered, by Talkspace as a direct result of the wrongdoing alleged herein.  Talkspace is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

55.     Plaintiff will adequately and fairly represent the interests of Talkspace in enforcing and prosecuting its rights.

56.     Plaintiff has continuously been a shareholder of Talkspace at times relevant to the wrongdoing complained of and is a current Talkspace shareholder.

57.     When this action was filed, Talkspace's Board of Directors consisted of seven directors: defendants Braunstein, Berg, Crowe, Pawar, Shachar, Warfield, and Yeaney. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, for the reasons set forth below.

**Defendant Braunstein**

58.     At all relevant times, Braunstein was HEIC's CEO, and therefore was not independent under NASDAQ listing rules.  As an employee and director of HEIC, Braunstein was substantially involved with the negotiation and finalization of the Business Combination, as

detailed in the Proxy Statement. Therefore, he knew or should have known of the increased customer acquisition costs. Moreover, as interim CEO and as alleged herein, Braunstein personally issued the misleading statements alleged herein and is named as a defendant in the Securities Class Action.  As a result, Braunstein would be interested in a demand regarding his own wrongdoing, and demand is futile as to him.

**Defendants Crowe, Pawar, Warfield, and Yeaney**

59.     Crowe, Pawar, Warfield, and Yeaney served as the members of the Audit Committee of Talkspace at all relevant times.  As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its risk management.  As alleged herein, Crowe, Pawar, Warfield, and Yeaney failed to oversee the risks impacting the Company, namely the clinician attrition, allowing the materially misleading statements to be disseminated in Talkspace's SEC filings and other disclosures.  Thus Crowe, Pawar, Warfield, and Yeaney breached their fiduciary duties and are not disinterested, and demand is excused as to them.

## <u>COUNT I</u>

### Against the Individual Defendants for Breach of Fiduciary Duty

60.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

61.     Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Talkspace's business and affairs, particularly with respect to issues as fundamental as public disclosures.

62.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  The Individual Defendants

intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Talkspace.

63.     In breach of their fiduciary duties owed to Talkspace, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

64.     In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly represent the success of its lead drug candidate, imetelstat.

65.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Talkspace has sustained and continues to sustain significant damages. Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

<u>**COUNT II**</u>

**(Against Defendants Frank, Hirschhorn, Braunstein, Bergeron, Dobres, Greifeld, Schulman, and Duggin for Contribution For Violations of Sections 10(b) and 21D of the Exchange Act)**

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     The conduct of these defendants, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

68.     Talkspace is named as a defendant in related securities fraud lawsuit that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Talkspace is found liable for violating the federal securities laws, the Company's liability will arise

in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

69.    As officers, directors and otherwise, these defendants had the power or ability to, and did, control or influence, either directly or indirectly, Talkspace's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

70.    Defendants are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

71.    Defendants have damaged the Company and are liable to the Company for contribution.

72.    No adequate remedy at law exists for Plaintiff by and on behalf of the Company..

## COUNT III

### Against the HEIC Defendants for Violation of Section 14 of the Securities Exchange Act of 1934

73.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

74.    Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein

not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's proxy statement filed on May 28, 2021 violated §14(a) and Rule 14a-9 because solicited stockholder approval for the Business Combination while failing to disclose material facts about Talkspace's business.

75.     In the exercise of reasonable care, defendants should have known that the statements contained in the proxy statement were materially false and misleading.

76.     The misrepresentations and omissions in the proxy statement were material to Company shareholders in voting on the proxy statement. The Proxy Statement solicited shareholder votes for: (i) the Business Combination; (ii) issuance of shares; (iii) adoption of an amended and restated certificate of incorporation; (iv) governance provisions; (v) director nominees; and (vi) incentive plan.   The proxy statement was an essential link in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties.

77.     The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statement.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Talkspace, demands judgment as follows:

A.     Declaring that plaintiff may maintain this action on behalf of Talkspace and that plaintiff is an adequate representative of the Company;

B.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.     Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Talkspace

D.     Directing Talkspace to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect

Talkspace and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1. a proposal to strengthen the Company's controls over financial reporting;

2. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3. a proposal to strengthen Talkspace's oversight of its disclosure procedures;

4. a provision to control insider transactions; and

5. a provision to permit the stockholders of Talkspace to nominate at least three candidates for election to the Board;

E.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Talkspace has an effective remedy;

F.     Awarding to Talkspace restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.     Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: June 15, 2022                          /s/ Benjamin I. Sachs-Michaels
                                             **GLANCY PRONGAY & MURRAY LLP**
                                             Benjamin I. Sachs-Michaels
                                             745 Fifth Avenue, Fifth Floor
                                             New York, NY 10151
                                             Telephone: (212) 935-7400
                                             Facsimile: (212) 756-3630
                                             Email: bsachsmichaels@glancylaw.com

                                             Robert V. Prongay
                                             Pavithra Rajesh
                                             1925 Century Park East, Suite 2100
                                             Los Angeles, CA 90067
                                             Telephone: (310) 201-9150
                                             Facsimile: (310) 201-9160
                                             Email: rprongay@glancylaw.com
                                             Email: prajesh@glancylaw.com

                                             *Attorneys for Plaintiff Fredrik Odsvall*

## **VERIFICATION**

I, Fredrik Odsvall, do hereby verify that I am a holder of common stock of Talkspace, Inc., and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 6/14/2022

_Fredrik Odsvall_
_____
Fredrik Odsvall